**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LARRY S.,<br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO,<br>*Commissioner of Social Security*,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:25-CV-1279 (KAD)<br><br><br><br><br>August 18, 2026 |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFF'S MOTION TO REVERSE AND REMAND (ECF NO. 17) AND COMMISSIONER'S MOTION TO AFFIRM (ECF NO. 23)**

Kari A. Dooley, United States District Judge:

Plaintiff Larry S. ("Plaintiff" or "Claimant") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). He appeals the decision of defendant, Frank Bisignano, the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for disability benefits pursuant to Title II of the Social Security Act (the "Act") and for supplemental security income pursuant to Title XVI of the Act. Plaintiff moves to reverse the Commissioner's decision on the basis that the ALJ's decision that Plaintiff's impairment did not meet one of the listings was not supported by substantial evidence. Alternatively, he seeks a remand for further proceedings before the Commissioner. In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is based upon the correct application of legal standards, and thus should be affirmed. For the reasons set forth below, the Plaintiff's Motion to Reverse or Remand, ECF No. 17, is GRANTED, and the Commissioner's Motion to Affirm, ECF No. 23, is DENIED.

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[1]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform

[1] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

their past relevant work; and (5) if the claimant is unable to perform their past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)–(v), 404.1509. The claimant bears the burden of proof with respect to Steps One through Four, and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated

simply, "[u]nless the Commissioner relied on an incorrect interpretation of the law, [i]f there is substantial evidence to support the determination, it must be upheld." *Taylor v. Berryhill*, No. 3:17-CV-1436 (SRU), 2018 WL 4562349, at *2 (D. Conn. Sept. 24, 2018) (citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)) (internal quotation marks omitted).

"If the court identifies a legal error, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning." *McIntire v. Astrue*, 809 F. Supp. 2d 13, 18–19 (D. Conn. 2010). "Where the decision is not supported by substantial evidence, the Court may remand for a rehearing. Rehearing is the proper remedy 'when 'further findings' would so plainly help to assure the proper disposition of [the] claim. . . .'" *Talyosef v. Berryhill*, No. 3:17-CV-1451 (KAD), 2019 WL 4017025, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)). The decision of whether to remand for a rehearing rests within the sound discretion of the district court. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004).

**Facts and Procedural History**

On February 12, 2020, Plaintiff applied for disability insurance benefits[2] pursuant to Title II of the Act,[3] alleging an onset of disability date of January 1, 2015. On December 11, 2019, he applied for supplemental security income (SSI)[4] pursuant to Title XVI,[5] alleging an onset of disability date of December 11, 2019. His claim was initially denied on November 3, 2020, and upon reconsideration on January 14, 2021. Thereafter, a hearing was held before an Administrative Law Judge (ALJ) on October 20, 2022. On December 22, 2022, the ALJ issued a

[2] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900 *et seq.*

[3] 42 U.S.C. § 401 *et seq.*

[4] The regulations for supplemental security income are found at 20 C.F.R. § 416.1400 *et seq.*

[5] 42 U.S.C. § 1381 *et seq.*

written decision denying both Plaintiff's applications for disability benefits and SSI. Plaintiff appealed that decision through the agency and then to this Court, on February 16, 2024. *See Stamp v. O'Malley*, Dkt. No. 3:24-CV-209 (JAM) (D. Conn.). The Court granted on consent Plaintiff's motion to remand and remanded the matter for further proceedings before the Commissioner on June 11, 2024. The Appeals Council reviewed the District Court's remand and vacated the ALJ's prior order, directing the ALJ to give further consideration to Plaintiff's mental impairments. Specifically, the Appeals Council noted that the ALJ "discounted all the opinion evidence relating to the claimant's mental health limitations" and largely ignored "the claimant's chronic homelessness and supportive housing in a structured and institutional setting." Certified Social Security Trs. ("CAR"), ECF No. 12, at 1990. The ALJ then held a second hearing on January 26, 2025. On February 11, 2025, the ALJ reached an unfavorable decision, finding that Plaintiff was not disabled under the Act. At issue on appeal, therefore, is the Commissioner's determination that Plaintiff was not disabled from the alleged onset date of January 1, 2015.

In his decision, at Step One, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since his alleged disability onset date of January 1, 2015. At Step Two, the ALJ determined that Plaintiff had severe impairments: specifically, lumbago; depressive disorder; attention deficit hyperactivity disorder (ADHD); and substance abuse disorder (in remission). The ALJ also determined that Plaintiff had some minor or non-severe impairments, including obesity; chronic obstructive pulmonary disease (COPD); and hearing and vision loss. At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations.[6] Specifically, the ALJ examined whether Plaintiff met the criteria of Listings 12.02 and 12.04 for mental health

[6] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing qualifying impairments).

impairments, including depressive, bipolar, and related disorders. The ALJ found that Plaintiff did not meet the criteria under either Paragraph B or Paragraph C under Listing 12.04.

At Step Four, the ALJ found that the Plaintiff has the residual functional capacity (RFC) to perform light work[7] subject to the following limitations:

> [Plaintiff] can stand/walk for 4 hours and sit for 6 hours. He has a sit/stand option where he may sit for 30 minutes, alternate to standing position for 2–3 minutes, then resume sitting. He can never climb ladders/ropes/scaffolds. He can occasionally climb stairs/ramps, balance, stoop, and crouch. He can never kneel/crawl. He cannot perform overhead reaching. He must not work in exposure to cold. He can perform simple, routine, repetitive tasks. He can sustain concentration, pace, and persistence for 2 hour segments. He can have occasional interaction with supervisors. He can have occasional, non-collaborative, interaction with coworkers. He can have brief and superficial (no more than 10%) of the workday interacting with the public. He must work with little/no changes in duties/routines. He must not perform work requiring independent judgment (no setting duties/schedules for others, no responsibility for the safety of others).

CAR at 1910. The ALJ further found that Plaintiff could not perform any past relevant work. At Step Five, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff could perform, considering his age, education, work experience, and limitations in the RFC. Accordingly, the ALJ concluded that Plaintiff was not disabled under §§ 216(i) and 223(d), from the alleged date of onset of January 1, 2015, through the date of the decision, February 11, 2025.

The Appeals Council did not assume jurisdiction of Plaintiff's case, *see* 20 C.F.R. § 404.984(d), and thus, this case is now ripe for federal court review.

[7] Defined in 20 C.F.R. § 404.1567(b) as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work, we determine that he or she can also do sedentary and light work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

**Discussion**

Plaintiff raises several challenges to the ALJ's findings. Primarily, Plaintiff argues that the ALJ erred at Step Three because he determined that Plaintiff's mental impairments did not meet the criteria of Listing 12.04. Plaintiff also argues that the ALJ did not adequately consider Plaintiff's mental health records, and therefore, he failed to comply with the Appeals Council's remand order to give further consideration to those impairments.

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability. The regulations also provide for a finding of such a disability *per se* if an individual has an impairment that is 'equal to' a listed impairment." *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *see also* 20 C.F.R. § 416.920(d). "An impairment meets the requirements of one of these listings 'when it satisfies all of the criteria' of a [L]isting." *Bouton*, 2007 WL 2889449, at *2 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); *see also* 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). "The claimant . . . bears the burden of proving that h[is] impairments meet [a] particular Listing." *Rivera v. Berryhill*, No. 3:17-CV-1760 (SRU), 2019 WL 4744821, at *11 (D. Conn. Sept. 30, 2019); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (summary order). "To show that he meets the criteria [of a Listing], [the claimant] must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques." *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 396 (S.D.N.Y. 2019) (internal quotation marks omitted). Significant here, "the ALJ is required to articulate the specific reasons justifying his decision that the claimant does *or does not* meet the relevant listing." *Howarth v. Berryhill*, No. 3:16-CV-1844 (JCH), 2017 WL 6527432, at *5 (D. Conn. Dec. 21, 2017) (emphasis added) (citing cases). Where the ALJ concludes that the relevant listing has not been met, the ALJ must specifically articulate

"the uncontroverted evidence that supports the claimant's application for benefits, and the significantly probative evidence that he or she rejects." *Id*. at *8.

Section 12.04 of the List of Impairments relates to depressive, bipolar and related disorders. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. There are three paragraphs of Listing 12.04: (A), (B), and (C); a claimant must establish the criteria of either Paragraphs A and B or Paragraphs A and C. *See id.*; *Rubin v. O'Malley*, 116 F.4th 145, 152 n.6 (2d Cir. 2024). The criteria for Listing 12.04 are as follows:

A) Medical documentation of the requirements of paragraph 1 or 2:
   1) Depressive disorder, characterized by <u>five</u> or more of the following:
      a) Depressed mood;
      b) Diminished interest in almost all activities
      c) Appetite disturbance with change in weight;
      d) Sleep disturbance;
      e) Observable psychomotor agitation or retardation;
      f) Decreased energy;
      g) Feelings of guilt or worthlessness;
      h) Difficulty concentrating or thinking; or
      i) Thoughts of death or suicide.
   2) Bipolar disorder, characterized by <u>three</u> or more of the following:
      a) Pressured speech;
      b) Flight of ideas;
      c) Inflated self-esteem;
      d) Decreased need for sleep;
      e) Distractibility;
      f) Involvement in activities that have a high probability of painful consequences that are not recognized; or
      g) Increase in goal-directed activity or psychomotor agitation. AND
B) Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
   1) Understand, remember, or apply information;
   2) Interact with others;
   3) Concentrate, persist, or maintain pace;
   4) Adapt or manage oneself. OR
C) Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

> 1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; <u>and</u>
> 2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. With regards to Paragraph C(1), a companion regulation explains that the SSA "will consider periods of inconsistent treatment or lack of compliance with treatment that may result from [the claimant's] mental disorder," and that if the evidence indicates that "inconsistent treatment or lack of compliance is a feature of [the claimant's] medical disorder, and it has led to an exacerbation of [the claimant's] symptoms and signs," the SSA will not consider that as evidence that the claimant has not received ongoing medical treatment under the Paragraph. *Id.* § 12.00(G)(2)(b). Likewise, with regards to Paragraph C(2), the regulations explain that the SSA will consider a claimant to have shown only marginal adjustment when the evidence shows that the claimant's "adaptation to the requirements of daily life is fragile," and that the evidence shows that "changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [their] functioning. *Id.* § 12.00(G)(2)(c).

As an initial matter, the ALJ did not discuss the Paragraph A criteria at all. "Courts generally regard this as a concession that the Paragraph A criteria have been satisfied." *Britney R. v. Comm'r of Soc. Sec.*, No. 3:23-CV-692 (TOF), 2024 WL 4258190, at *6 (D. Conn. July 9, 2024) (citing *Mariano v. Soc. Sec. Admin.*, No. 3:08-CV-1738 (JCH), 2010 WL 128688, at *9 (D. Conn. Mar. 30, 2010)). Indeed, the Commissioner makes no argument that the Paragraph A criteria are not met on the present record. *See* Def.'s Memo, ECF No. 23; *see also Britney R.*, 2024 WL 4258190, at *6. And for good reasons, Plaintiff's medical records easily and obviously establish the Paragraph A criteria. *See, e.g.*, CAR at 89, 586, 646–47, 733–40 (supporting finding of

Paragraph A(1), including depressed mood, diminished interest, sleep disturbance, difficulty concentrating or thinking, thoughts of death or suicide).

The ALJ analyzed the Paragraph B criteria and whether Plaintiff's mental impairments met the severity requirements. As to the first of the Paragraph B criteria (understanding, remembering and applying information), the ALJ found that Plaintiff had a mild limitation: he observed that Plaintiff "needs special reminders for personal needs and for taking medication"; that a nurse needs to come to his apartment every day to remind him to take his medication; that using a calendar helps with his organization; that there is "no convincing evidence" that Plaintiff has difficulties understanding his medical providers; and that there is otherwise "no evidence to show significant limits with his ability to understand and follow at least short and simple tasks." CAR at 1909. As to the second of the Paragraph B criteria (interacting with others), the ALJ found that Plaintiff had a moderate limitation: he noted that Plaintiff spends time with others and goes to the store with his aunt; that he has interacted appropriately with his medical providers; and that he often gets angry and anxious. *Id.* As to the third of the Paragraph B criteria (concentration, persistence and maintaining pace), the ALJ found that Plaintiff had a moderate limitation: he noted that Plaintiff often "does not finish what he starts, that he does not follow written instructions very well, and he does not remember spoken instructions"; but that there is "no convincing evidence for difficulties and completing appointments," that there have been "mixed results," and the records showed "some distractibility" and "circumstantial thought process." *Id.* As to the fourth of the Paragraph B criteria (the ability to adapt and manage oneself), the ALJ found that Plaintiff had a moderate limitation: he observed that Plaintiff does not handle stress well; that he exhibited periods of possible psychosis and delusions, but that they did not persist while taking medication; and that

there are "little to no findings for persistent emotional lability or significant mood fluctuations." *Id.*

The ALJ also briefly addressed the Paragraph C criteria. In sum total, the ALJ stated:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

*Id.* at 1910. It is worth observing that this formulation is clearly stock language for the SSA, and thus, district courts have encountered it with some frequency. *See Britney R.*, 2024 WL 4258190, at *7–8 (collecting and discussing cases). The ALJ essentially parrots the criteria without elaboration or analysis.

Plaintiff argues that the ALJ's finding that he did not satisfy the Paragraph C criteria is not supported by substantial evidence. *See* Pl.'s Memo, ECF No. 17-1, at 41–42. Implicit in Plaintiff's argument is a challenge to the adequacy of the ALJ's terse (or non-existent) explanation regarding the Paragraph C criteria and whether it is supported by substantial evidence. *See Britney R.*, 2024 WL 4258190, at *7 (explaining how the issue of whether substantial evidence supports a listing determination is intertwined with inquiry into whether the ALJ's explanation was adequate). In opposition, the Commissioner acknowledges that the ALJ did not explicitly articulate his rationale for his Paragraph C determination, but nevertheless urges the Court to affirm because "the absence of express rationale for an ALJ's conclusions does not prevent the court from upholding them as long as the court is able to look to other portions of the ALJ's decision and to credible evidence in finding that the determination was supported by substantial evidence." Def.'s Memo, ECF No. 23, at 6 (quoting *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010)). While

this is certainly the law, on this record, the ALJ's conclusion as to the Listing requirements cannot stand.

There is a "tension" in the Second Circuit as to whether an ALJ's determination of the Paragraph C criteria must be affirmed if the Commissioner can point to substantial evidence elsewhere in the record, or whether an ALJ's failure to explain his Paragraph C determination constitutes reversible error if the claimant can point to substantial evidence in his favor. *See Britney R.*, 2024 WL 4258190, at *7–9. However, the Second Circuit has also held that when there is substantial conflicting evidence in the record, an ALJ has a duty to explain why he decided against the claimant. *See McCallum v. Comm'r of Soc. Sec.*, 104 F.3d 353 (2d Cir. 1996). In light of this guidance, the Court finds the analysis of the *Britney R.* court compelling and concludes that "the Plaintiff's case should be remanded if there is substantial evidence on both sides of the Paragraph C issue, and if the ALJ's decision sheds no meaningful light on how he resolved the conflict." 2024 WL 4258190, at *9.

"Cases may arise . . . in which [the court] would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, [the court] [should] not hesitate to remand the case for further findings or a clearer explanation for the decision." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). Unfortunately, here, the ALJ's decision rejecting Plaintiff's claim of a listed disability is "entirely conclusory and provides the [C]ourt with no understanding of the basis for the ALJ's decision." *Nieves v. Colvin*, No. 3:15-CV-1842 (JCH), 2016 WL 7489041, at *5 (D. Conn. Dec. 30, 2016). Indeed, "district courts have generally remanded when the ALJ disposes of Paragraph C in a single, conclusory sentence." *Britney R.*, 2024 WL 4258190, at *8 (collecting cases); *see also Rosario v. Kijakazi*, No. 20-CV-5490 (BCM), 2022 WL 875925, at *18 (S.D.N.Y.

Mar. 15, 2022) (holding that "it is impossible to conclude from the present record that the ALJ conducted a meaningful analysis" (quotation omitted)); *Nicole F. v. Saul*, No. 8:18-CV-760 (DJS), 2019 WL 4736216, at *4 (N.D.N.Y. Sept. 27, 2019) (remanding where the ALJ's decision "does not identify the paragraph C criteria or offer any reasoning to support the conclusion that the criteria were not met," which "warrants remand for further explanation" (quotation omitted)).

Even if, as urged by the Commissioner, the Court were to look to the ALJ's analysis of the Paragraph B criteria for insight into his Paragraph C decision, the ALJ's narrative regarding the Paragraph B criteria, discussed below, is difficult to reconcile with the present record. And as such, it certainly does not fill the gaping hole in the Paragraph C analysis.[8] Indeed, the record is replete with evidence tending to establish that Plaintiff has extreme difficulty just keeping up with the tasks of daily living.

The ALJ frequently cites Plaintiff's self-completed function report, but in so doing, appears to cherry-pick Plaintiff's responses to support a conclusion that his limitations are milder than needed to meet the Listing. For example, Plaintiff's self-reported symptoms include that he cannot stay in one place for more than a few minutes; that he can't concentrate or learn new things because he forgets; that it is hard for him to dress, bathe, and feed himself when he is depressed; that he needs daily reminders to eat and take care of his basic needs; that a nurse comes to his apartment every day to give him medication; that his caseworker needs to remind him to do basic upkeep, such as laundry, taking out the trash, and cleaning. CAR at 477–80. He states that he cannot take care of his personal finances because of his memory issues; that he needs to be reminded to attend doctor's appointments; that he does not remember spoken instructions and cannot follow written instructions well. CAR at 480–82. These self-reported limitations are generally supported by the

[8] Plaintiff does not explicitly challenge the ALJ's Paragraph B determination. However, the supportability of the Paragraph B findings, is, to say the least, not obvious.

Plaintiff's medical and psychosocial records. *See, e.g.*, CAR at 89 (diagnosing severe depression and ADHD); *id.* at 1856–57 (noting marked restrictions in activities of daily living); *id.* at 733–40 (noting consistent melancholy, impaired judgment, tangential speech, and suicidal ideation); *id.* at 571–76 (same); *id.* at 692 (same); *see also id.* at 571–76. Yet, the ALJ characterized this evidence as not demonstrating serious limitations on Plaintiff's cognition, concentration, and ability to manage himself. *See, e.g.*, *id.* at 1909 ("[T]here is no evidence to show significant limits with his ability to understand and follow at least short and simple tasks."); *id.* ("There is no convincing evidence for difficulties completing appointments due to problems in this area."); *id.* ("On the whole, the evidence does not show that the claimant had a significant loss of his ability to . . . maintain well-being in a work setting.").

In addition, the ALJ said that he found the testimony of JoAnne Hughes, LMSW, Plaintiff's social worker, probative, as she has been working with him weekly and daily for five years. *Id.* at 1915. He characterizes her testimony as supporting a finding of "some distractibility," but "intact thought process and intact cognition." *Id.* But Ms. Hughes testified that the Plaintiff needs constant reminders to take care of his basic needs, including cleaning his apartment and taking out the garbage. *Id.* at 1966–67. Ms. Hughes testified that Plaintiff will let garbage pile up in his apartment in the corner rather than take it out. *Id.* at 1968. She also testified that Plaintiff needs step-by-step assistance with completing basic tasks, and that when she suggested that he take daily walks outside for five minutes or less, he would panic and start crying. *Id.* at 1969–71. This is simply not testimony that could support a finding of "some distractibility."

The ALJ does not once mention Plaintiff's extensively documented and persistent history of suicidal ideation (one of the Paragraph A criteria), *see, e.g.*, *id.* at 571–76; *id.* at 586; *id.* at 739–40, nor does he discuss Plaintiff's increasing difficulties in leaving the house and attending

appointments in 2023 and 2024. *See id.* at 2339, 2350, 2353; *see* Pl.'s Memo, ECF No. 17-1, at 22–28 (collecting CAR citations). The ALJ also does not acknowledge that Plaintiff lives in a supportive housing apartment,[9] and he does not explain how the reports from Plaintiff himself, from his caseworkers, and from his medical providers that he cannot perform basic tasks of daily living without assistance and reminders is consistent with a finding that the Plaintiff has only mild or moderate limitations.

Thus, the Paragraph B criteria findings are themselves of questionable validity and therefore do not provide substantial evidence for the finding as to the Paragraph C criteria. In short, "[t]he administrative record does not support such a summary rejection of Plaintiff's claim." *Brandi H. v. Kijakazi*, No. 3:21-CV-1411 (KAD), 2022 WL 3028004, at *5 (D. Conn. Aug. 1, 2022). Rather, "[t]he ALJ's singular conclusion stands in stark contrast to the extensive . . . findings detailed above that [tend to] satisfy the Listing requirements" of 12.04(C). *Alban*, 2012 WL 6728055, at *4. The ALJ's lack of analysis and utter failure to provide reasons for his statement leaves this Court unable to determine whether his conclusion that Plaintiff's condition does not meet any listing is supported by substantial evidence. *Id.*; *Howarth*, 2017 WL 6527432, at *7.

The ALJ's decision at Step Three is inconsistent with the record evidence; that, combined with the complete lack of explanation for the Paragraph C criteria, warrants remand on the issue of whether Plaintiff's severe impairments meet the requirements of Listing 12.04(C). *See Brandi H.*, 2022 WL 3028004, at *6 (collecting cases). And given the questionable support for the

---

[9] Not only is living in a highly structured, supportive setting one of the Paragraph C criteria, but it is also a part of the record that the Appeals Council specifically directed the ALJ to address when remanding for further proceedings. CAR at 1990; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(C)(1) (claimant will meet listing requirement of Paragraph C where, *inter alia*, there is evidence of "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing").

Paragraph B findings, the Commissioner, upon remand, shall re-examine the Paragraph B criteria as well.

**Reassignment to a Different ALJ**

Generally, it is the Commissioner's decision whether to remand a case to a different ALJ. *Thode v. Comm'r of Soc. Sec.*, No. 25-CV-4839 (RWL), 2026 WL 915255, at *4 (S.D.N.Y. Apr. 3, 2026). However, courts may nevertheless request that a case be remanded to a different ALJ where the disability review process's integrity would be threatened by bias or prejudice, or in the absence of bias or prejudice, where "a fresh look by another ALJ . . . would be beneficial." *Id.* at *4–5 (quoting *McClaney v. Astrue*, No. 10-CV-5421, 2012 WL 3777413, at *20 (E.D.N.Y. Aug. 10, 2012)) (collecting cases). The Court detects no suggestion of prejudice or bias on the part of the ALJ, but the Court nevertheless considers whether a fresh look would be beneficial. *See Collado v. Astrue*, No. 05-CV-3337 (KMK) (LMS), 2009 WL 2778664, at *16 (S.D.N.Y. Aug. 31, 2009).

"Courts in this Circuit generally have ordered reassignment based on the benefits of a fresh look in two circumstances: after an ALJ has either issued two unfavorable decisions, or if the ALJ failed to properly follow the directives of the Appeals Council." *Thode*, 2026 WL 915255, at *6 (collecting cases). Both factors are applicable here: the ALJ has issued two unfavorable decisions to the Plaintiff, both of which have been reversed and remanded. After the first remand, the Appeals Council specifically directed the ALJ to consider the Plaintiff's mental impairments and the effect of his placement in supportive housing, which, as discussed above, the ALJ failed to adequately do. The Court thus finds that reassignment to a different ALJ for a "fresh look" would be beneficial to this case. *See id.* at *7–8.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse or Remand (ECF No. 17) is GRANTED, and the Commissioner's Motion to Affirm (ECF No. 23) is DENIED. The Clerk of the Court is directed to enter judgment in favor of the Plaintiff and to remand this matter to the Commissioner for rehearing and further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with this Memorandum of Decision. On remand, the Commissioner is respectfully directed to assign this case to a different ALJ. The ALJ shall specifically consider the record evidence regarding criteria relevant to Listings 12.04(C) and 12.04(B), and articulate reasons for accepting or rejecting such evidence in determining whether Plaintiff's impairments meet Listing criteria.

The Clerk of the Court is further instructed that if a subsequent appeal is made to this Court following remand, it is to be directly assigned to the undersigned.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of August, 2026.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE